FILED
2013 Jul-12  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **OSCAR JAMES ("JIM")** | ) | |
| **MCGRIFF, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:12-CV-2241-VEH** |
| | ) | |
| **ALABAMA POWER COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Oscar James McGriff, Jr. ("Mr. McGriff") initiated this job discrimination lawsuit arising under the Age Discrimination in Employment Act ("ADEA") and the Alabama Age Discrimination in Employment Act ("AADEA") against Defendant Alabama Power Company ("APCo") on June 21, 2012. (Doc. 1). Pending before the court is APCo's Motion for Summary Judgment (Doc. 18) (the "Rule 56 Motion") filed on April 15, 2013. APCo filed all of its supporting materials on this same date. (Docs. 19, 20).

Mr. McGriff filed his brief and evidence in opposition to the Rule 56 Motion

(Doc. 21)[1] on May 6, 2013.  On May 20, 2013, APCo followed with its reply (Doc.

23) and also filed a Motion To Strike Exhibits 2 and 3 in Plaintiff's Evidentiary

Submission (Doc. 23) (the "Strike Motion").

Neither side elected to file any additional briefing.  Accordingly, both the Rule

56 Motion and the Strike Motion are now under submission, and, for the reasons

explained below, both motions are due to be granted.  Alternatively, the Strike

Motion is due to be termed as moot.

## II.   FACTUAL BACKGROUND[2]

Mr. McGriff began working for APCo in 1978 as a Junior Accountant.   AF

No. 1.[3]  Mr. McGriff currently holds the job of Dispatch Supervisor or Operations

--------------------------------------------------------

[1]   The page references to Doc. 21 correspond with the court's CM/ECF numbering system.

[2]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3]   The designation "AF" stands for admitted fact and indicates a fact offered by APCo that Mr. McGriff has admitted in his written submissions on summary judgment or by virtue of any other evidence offered in support of his case.  Whenever

Supervisor within the Power Delivery Department.  AF No. 4.  He has been in this position for fourteen years.  *Id.*

On May 24, 2011, Mr. McGriff applied for the position of Assistant Customer Service Manager ("ACSM") for APCo's Tuscaloosa Business Office located within the company's Western Division.  AF No. 8.  Michael Magouyrk ("Mr. Magouyrk"), along with other candidates, also applied for this position.  Ultimately, Mr. McGriff and Mr. Magouyrk were the only two applicants who satisfied APCo's screening criteria and who were selected to be interviewed.  AF No. 21.

Tammy Graves ("Ms. Graves"), APCo's Tuscaloosa Business Office Manager, picked two other employees to serve with her on the selection committee for the ACSM position:  Chris Shinstock ("Mr. Shinstock") and Terry Tittle ("Mr. Tittle").  AF No. 23.1.  Additionally, Nancy Potts ("Ms. Potts"), APCo's Compliance Specialist for the Western Division, assisted the selection committee and took notes during the interview process.   AF No. 24; (Doc. 20-7 at 6 ¶ 16 ("I also took notes

---

Mr. McGriff has adequately disputed a fact offered by APCo, the court has accepted Mr. McGriff's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of APCo's statement of facts as set forth in Doc. 19 and responded to by Mr. McGriff in Doc. 21.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 23.1) would indicate the first sentence of paragraph 23 of APCo's statement of facts is the subject of the court's citation to the record.  Other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

regarding the interviewees' responses and regarding the committee members' comments on the candidates.")).[4]

Both candidates' interviews occurred on May 27, 2011.  AF No. 26.1.  Mr. Magouyrk had a very good interview and gave calm and concise answers.  AF No. 30.1.  Mr. McGriff, on the other hand, became emotional during his interview and had trouble focusing on and answering the interview questions without digressing.  AF No. 32.1; AF No. 32.2.

The selection committee determined that Mr. McGriff lacked knowledge and experience in several current APCo business office practices in contrast to Mr. Magouyrk's exposure to these areas.  AF No. 33.1; AF No. 35.  Mr. Magouyrk also had more familiarity than Mr. McGriff with respect to compliance procedures required by the Sarbanes-Oxley Act ("SOX").   (Doc. 20-8 at 7 ¶ 19).[5]   Both "[e]xperience in business office operations" and "[d]etailed knowledge of . . . SOX compliance" were included as requirements in the job posting for the ACSM position generated by Ms. Graves.  AF No. 10; AF No. 9.1.

Subsequent to receiving input from the other members of the selection

---

[4]    The page references to Doc. 20-7 correspond with the court's CM/ECF numbering system.

[5]    The page references to Doc. 20-8 correspond with the court's CM/ECF numbering system.

committee, Ms. Graves selected Mr. Magouyrk as the most qualified candidate for the job. (*See* Doc. 20-8 at 9 ¶ 24 ("Both Mr. Shinstock and Mr. Tittle recommended that I hire Mr. Magouyrk as [the ACSM].")); AF No. 39. At the time of the selection process, Mr. McGriff was 64 years old and Mr. Magouyrk was 31 years old. AF No. 42.1.

## III.   STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

5

### B.     Employment Discrimination Generally

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981))); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984) ("A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." (citing *Clark v. Huntsville City Board of Education*, 717 F.2d 525, 529 (11th Cir. 1983))).

Although the Supreme Court has established the basic allocation of burdens and order of proof in a disparate treatment case, *see, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,  36 L. Ed. 2d 668 (1973); *Burdine*, *supra*; *Desert Palace v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 56 L. Ed. 2d 84 (2003), that framework applies only in cases in which there is no direct evidence of discrimination.  *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.

1987) ("The *McDonnell Douglas-Burdine* patterns of proof were designed to ease the evidentiary burdens on employment discrimin[a]tion plaintiffs, who rarely are fortunate enough to have access to direct evidence of intentional discrimination." (citing *Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 638 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 40 (1993)).[6]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's

---

[6] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610-11 (11th Cir. 1987)). Based upon this standard, Mr. McGriff has properly presented his case to the court as a circumstantial evidence one. (*See, e.g.,* Doc. 21 at 11 (setting forth *prima facie* factors applicable to an ADEA discrimination claim)).

legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05, 93 S. Ct. at 1824-26; *Burdine*, 450 U.S. at 252-54, 101 S. Ct. at 1093-94; *Desert Palace*, 539 U.S. at 101-02, 123 S. Ct. at 2155.

## C.   Age Discrimination

### 1.   ADEA

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to fall under the ADEA's protections, an employee must be "at least 40 years of age[,]" 29 U.S.C. § 631(a), and the plaintiff "retains the burden of persuasion to establish that age was the '<u>but-for</u>' cause of the employer's adverse action."[7]  *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009) (emphasis added).

The Eleventh Circuit "has adopted a variation" of the *prima facie* case standard articulated by the Supreme Court for Title VII claims in *McDonnell Douglas* for cases arising under the ADEA. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565,

---

[7] In contrast to the <u>motivating factor</u> standard that is applicable in Title VII and other discrimination lawsuits.

566 (11th Cir. 1992). "Under this variation of the *McDonnell Douglas* test for establishing a *prima facie* case of discrimination, the plaintiff must show that he (1) was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with [or not selected for a position over] a person outside the protected group, and (4) was qualified to do the job." *Mitchell*, 967 F.2d at 566 (citing *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)); *see also Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998) ("To establish his *prima facie* case of discriminatory failure to promote, Standard must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the protected group was given the position." (citing *Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995))).

"If this is done, the defendant has the burden of going forward and articulating a legitimate, non-discriminatory rationale for the [adverse employment action]." *Verbraeken*, 881 F.2d at 1045. "Finally, if the defendant rebuts the presumption of discrimination, the plaintiff must prove by a preponderance of the evidence that the employer's asserted reason is merely a pretext for a discriminatory [action]." *Id.*

## 2. AADEA

Finally, claims arising under the AADEA are analyzed according to the same

framework as the ADEA. *See Robinson v. Alabama Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007) ("[T]he federal courts have applied to AADEA claims the same evidentiary framework applied to federal age-discrimination claims."); *id.* (citations omitted) ("We agree that this framework . . . is the proper means by which to review an AADEA claim.").

### D.    Evidentiary Rulings

All evidentiary decisions are reviewed under an abuse-of-discretion standard. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508 (1997) ("We have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings.").  "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 Fed. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court.  Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989).  Moreover, even if Auto-Owners can show that

10

certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee an appealing party relief from an adverse final judgment. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" in order for reversible error to occur.

## IV.   ANALYSIS

### A.    APCo's Rule 56 Motion

#### 1.    Mr. McGriff has established a *prima facie* case of age discrimination.

APCo does not challenge the sufficiency of Mr. McGriff's *prima facie* case of age discrimination. (*See* Doc. 19 at 20-21 ("Assuming *arguendo* that McGriff can establish a *prima facie* case, APCo had legitimate, non-discriminatory reasons for selecting Magouyrk over McGriff.")). Accordingly, APCo has conceded and/or alternatively abandoned at the summary judgment stage any *prima facie* attack on Mr. McGriff's failure to promote claim. *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000)

11

(failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))); *Dunmar*, 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments . . . ." (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994))); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Dunmar*, 43 F.3d at 599)).

Further, Mr. McGriff has undoubtedly satisfied the requisite elements:   (1) when he applied for the ACSM position, he was in his sixties and, therefore, fell within the protected age group; (2) he did not receive the promotion; (3) he was qualified for the job; and (4) APCo hired a candidate, Mr. Magouyrk, who was in his thirties and outside the protected age status, to fill the opening.  *See Coutu*, 47 F.3d at 1073 (setting forth *prima facie* model applicable when plaintiff is alleging a failure to hire); (*see also* Doc. 20-7 at 5 ¶ 10 ("At the time of the selection process, Mr. McGriff was 64 years old and Mr. Magouyrk was 31 years old."); *id.* at 6 ¶ 18 ("Ms.

Graves selected Mr. Magouyrk for the position of Assistant Customer Service Manager.")).  Therefore, the court concludes that Mr. McGriff has met his *prima facie* burden.

> **2.    APCo has articulated non-discriminatory reasons for its decision and Mr. McGriff has not adduced sufficient evidence that those reasons are pretextual.**

APCo has, in turn, met its burden of production.  Accordingly, as the briefs reveal, the heart of the parties' dispute is over whether Mr. McGriff has adduced sufficient evidence of pretext pertaining to APCo's promotional decision.

APCo's reasons for selecting Mr. Magouyrk over Mr. McGriff for the position of ACSM as articulated by Ms. Graves were:  (1) Mr. McGriff had less recent business office experience than Mr. Magouyrk and specifically that he lacked familiarity with APCo's current processes for Cash, No Reads, Collections, and Life Support; (2) Mr. McGriff had only a very limited exposure to compliance standards under SOX; and (3) Mr. McGriff had a much worse interview than Mr. Magouyrk. (Doc. 19 at 21).  Thus two of APCo's justifications are objective, while the last one is subjective.

Whenever a defendant offers multiple reasons for an employment decision, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence

for a reasonable factfinder to conclude that <u>each</u> of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519,1543 (11th Cir. 1997)) (emphasis added).  To create a triable issue of pretext, the caliber of the plaintiff's proof must be "of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions." *MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991 (internal quotation marks omitted) (quoting *Verbraeken*, 881 F.2d at1045).

Here, the court concludes that the evidence upon which Mr. McGriff relies is inadequate to establish pretext with respect to each of the three explanations provided by APCo regarding its decision not to hire him for the open position.

### a.    Mr. MrGriff's Lack of Exposure to Current Business Office Processes

Regarding the first reason, Mr. McGriff contends that his lack of exposure to APCo's "current" business office processes is "suspicious" because he was "not asked] any questions regarding those technical matters during his interview." (Doc. 21 at 16).  Mr. McGriff also urges that the use of the word "'current' referred to the fact that he is an older man, and that his age was the reason that he was not hired for the position." (Doc. 21 at 16).  However, the word "current" as applied to APCo's

business office processes is not inherently age-related, and Mr. McGriff has not shown that it is a code word for age discrimination in the context of the facts of this case.

Moreover, nowhere in his response does Mr. McGriff squarely address his level of expertise in the four specific areas identified by APCo: (1) cash; (2) no reads; (3) collections; and (4) life support. (Doc. 21 at 16). Further, while Mr. McGriff has recited several job experiences that he has gained as a Dispatch Supervisor (Doc. 21 at 16), he has not shown how handling accounting functions, interacting with customer service representatives, and addressing billing matters, translate into having a familiarity with the collection of specialized business office operations delineated by APCo for the position at issue.

### b.    Mr. McGriff's Deficits in SOX Compliance

Mr. McGriff's brief offers no arguments about APCo's second reason–his lack of SOX compliance-related experience. (*See* Doc. 21 at 13-14 (omitting any reference to SOX as a factor in APCo's decision)). In the dearth of any opposition which brings into question the merits of this articulated rationale, Mr. McGriff has conceded any contention that this particular explanation offered by APCo is, instead, a pretext for age-related discrimination. Therefore, consistent with *Chapman* and

*Combs*, APCo is entitled to summary judgment for this reason alone.

Similarly, because Mr. McGriff's pretext position is nonexistent, he has neglected not only to trigger this court's consideration of, but also to carry, his applicable burden as the nonmovant in a circumstantial evidence case of discrimination. As the Eleventh Circuit has succinctly described a litigant's duty to suitably frame an issue for judicial review:

> The district court did not consider that argument because it was not fairly presented. <u>Only one sentence in Smith's 116-page petition for a writ of habeas mentioned the possibility of inter-claim cumulative analysis and no authority was cited for it</u>. Smith did not even allude to the argument in his combined 123-page memoranda of law in support of his petition. That is not adequate presentation of the issue. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (an issue was not adequately presented unless it was raised in a way that the district court could not misunderstand it); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *cf. Flanigan's Enters. Inc. v. Fulton County*, 242 F.3d 976, 987 n. 16 (11th Cir. 2001) (holding that an argument was waived because the appellants "fail[ed] to elaborate or provide any citation of authority in support of" the argument in their brief). <u>Because the issue or argument was not properly presented to the district court, we will not decide it</u>. *See Johnson v. United States*, 340 F.3d 1219, 1228 n. 8 (11th Cir. 2003) ("Arguments not raised in the district court are waived."); *Hurley v. Moore*, 233 F.3d 1295, 1297-98 (11th Cir. 2000); *Nyland v. Moore*, 216 F.3d 1264, 1265 (11th Cir. 2000); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1511 n. 30 (11th Cir. 1996); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).

*Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009) (emphasis added). Therefore, akin to *Smith*, Mr. McGriff's pretext prong also fails

on account of Mr. McGriff's failure to acknowledge, much less create a genuine issue of, pretext with respect to his undisputed SOX deficiencies.

### c.    Mr. McGriff's Poor Interview

Concerning APCo's third explanation, Mr. McGriff does not dispute APCo's assessment of his interview as a poor one.  Further, to the extent that Mr. McGriff contests APCo's reliance upon his admittedly unimpressive interview as a subjective criterion for deselecting him, such an objection, without more, is inadequate to carry his pretext burden.

As the Eleventh Circuit has clarified an employer's use of subjective factors in the context of a challenged promotion:

As we recently explained in *Chapman*:

A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas/Burdine* analysis.  Indeed, subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy . . . .  Personal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions. Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 108 S. Ct. 2777, 2787, 101 L. Ed. 2d 827 (1988), yet they are essential to an individual's success in a supervisory or professional position.  *See id.* at 999, 108 S. Ct. at 2791 ("It would be a

17

most radical interpretation of Title VII for a court to enjoin use of an historically settled process and plainly relevant criteria largely because they lead to decisions which are difficult for a court to review."). It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. *See Watson*[], 487 U.S. at 999, 108 S. Ct. at 2791. To phrase it differently, subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons. . . . A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.

229 F.3d at 1033-34 (citations omitted).

As *Chapman* makes clear, an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag. Certainly nothing in our precedent establishes that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination. To reiterate, Plaintiffs do not squarely challenge the legitimacy of the specific criteria that Fields asserts he took into account in deciding who to promote. Defendants' expert, Dr. Austin, endorsed the appropriateness of those criteria, and Plaintiffs did not contradict that evidence, other than to propose that the process should have relied more heavily on objective data such as the written test scores from the qualification exercise. Although Plaintiffs, as noted below, disagree with how the various candidates stacked up under the criteria considered by Chief Fields, they completely fail to show discriminatory intent in the selection of those criteria or in the choice to focus on those criteria and correspondingly downplay "objective" data from the qualification exercise. Simply put, the fact that Chief Fields's decisions were based on subjective considerations, such as a candidate's leadership ability and maturity,

<u>does not by itself advance Plaintiffs' pretext argument</u>.

*Denney v. City of Albany*, 247 F.3d 1172, 1185-86 (11th Cir. 2001) (footnotes omitted) (emphasis added); *cf. Chapman*, 229 F.3d at 1036 ("Because the poor interview subjective reason backed up by clear and reasonably specific bases is a legitimate, nondiscriminatory reason, and Chapman failed to present sufficient evidence to show that the reason was pretextual, the defendants were entitled to summary judgment on the ADEA claims.").

### d.   Mr. McGriff's Other Ineffective Efforts in Establishing Pretext

Mr. McGriff additionally suggests that pretext exists because he "had managed covered employees for years [in contrast to Mr. Magouyrk], and he knew the Defendant's contract book very well." (Doc. 21 at 16-17).  While disparities in the qualifications and experience levels of candidates may, under certain circumstances, constitute evidence of pretext, in this instance, Mr. McGriff has failed to show gaps "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006).

19

In particular, Mr. McGriff has conceded that Mr. Magouyrk had more experience in the areas of SOX compliance and certain current business office processes than he.  Mr. McGriff also does not dispute that Mr. Magouyrk's interview went better than his.

Instead, Mr. McGriff's brief seems to suggest that his years of service with APCo should outweigh all other selection criteria.  However, "Title VII does not [even] require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class."  *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. . . .'" (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988))).   Thus, Mr. McGriff cannot satisfy the pretext prong by virtue of his "clearly superior" qualifications for the ACSM position. *Ash*, 546 U.S. at 457, 126 S. Ct. at 1198 (internal quotation marks omitted) (quoting *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)).

Mr. McGriff also points to some arguably age-related comments made by Ms. Potts in which she encouraged Mr. McGriff to consider retiring.  *See* AF No. 42.3

(Ms. Potts's allegedly telling Mr. McGriff "if I was in your position, I would retire" and "you ought to think about retiring"); AF No. 42.4 (Ms. Potts's allegedly stating to Mr. McGriff post-promotion "I guess she [Ms. Graves] wanted someone that was up and coming"). While the record establishes that Ms. Potts facilitated the interview and selection process in an administrative capacity, it lacks confirmation that she had any substantive input into the decision to select Mr. Magouyrk over Mr. McGriff.[8]

Instead, the record reveals that the sole person responsible for the final decision adverse to Mr. McGriff was Ms. Graves, the Tuscaloosa Business Office Manager. Further, in reaching her conclusion, Ms. Graves has explained that she relied only upon input from the two other selection committee members picked by her: Mr. Shinstock and Mr. Tittle.

As the Eleventh Circuit has described the caliber of proof necessary for a reasonable jury to conclude that an employee served in a decision-maker role:

> With regard to her second theory of causation, Clover relies primarily on two pieces of evidence to support her position that Hollingsworth was a decision-maker. We find neither persuasive. First, she points to Hollingsworth's testimony that it was the general practice of the Human Resources Department, of which Hollingsworth was Assistant Vice-President, to review and evaluate termination decisions at TSYS. Clover argues that Hollingsworth's role in reviewing and

---

[8]  For example, Mr. McGriff has not adduced any evidence that Ms. Graves asked Ms. Potts for her opinion about who was the best candidate or that Ms. Graves consulted Ms. Potts' notes before reaching her final determination.

evaluating termination decisions was enough for a reasonable jury to infer that she was a decision-maker in TSYS' termination of Clover. The problem with that argument, however, is that Hollingsworth did not testify that she actually had the authority to overrule the decision of Miller, a senior vice-president, to terminate Clover.  Nor did Clover present any evidence showing Hollingsworth had such authority. Furthermore, the undisputed testimony of both Hollingsworth and Miller was that Hollingsworth made no recommendation at all to Miller concerning whether he should terminate her. There is no evidence to contradict that unequivocal testimony.

Second, Clover points to her testimony that Miller told her that he would revoke his decision to terminate her if she could work out her differences with Hollingsworth concerning the scheduled time of Clover's March 23 meeting with the Human Resources. According to Clover, she did work out those differences, and Hollingsworth promised to tell Miller. Although Clover argues that this made Hollingsworth a decision-maker in her termination, we cannot agree. At most, the evidence shows Hollingsworth supplied Miller with information (apparently favorable to Clover) which he may or may not have considered in making his decision to terminate Clover. It does not show that Hollingsworth made the decision. To the contrary, Clover's own testimony was that when Hollingsworth called her on March 27, 1995, Hollingsworth told her that it was Miller who had decided to terminate her for falsifying information. Accordingly, we conclude that Clover failed to present sufficient evidence to establish that Hollingsworth was a decision-maker in her termination.

*Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1356 (11th Cir. 1999) (emphasis added).

Here, comparable to *Clover*, the record lacks proof that Ms. Potts made any recommendations to Ms. Graves about which candidate to select, much less that she had the authority to overrule Ms. Graves's promotional decision.  Thus, a reasonable

jury could not find Ms. Potts to be a decision-maker and any ambiguous age-related

references made by her are, therefore, ineffective to show pretext:

> In several age discrimination cases, however, this court has explained that <u>comments by non-decisionmakers do not raise an inference of discrimination, especially if those comments are ambiguous.</u> *See Standard*, 161 F.3d at 1329-30 (statement by non-decisionmaker that "older people have more go wrong" was not probative of discriminatory intent); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir.1987) (statement by non-decisionmaker that "[t]he Hardy Corporation was going to weed out the old ones" did not raise a genuine issue of material fact regarding discriminatory intent); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610-11 (11th Cir.1987) (statement by decisionmaker that employee could not pass a physical examination "at [his] age," when weighed against other evidence, did not raise issue of discriminatory intent).

*Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999) (emphasis added).

The age-related and isolated utterances made by Ms. Potts pertain to her

opinions about whether and when Mr. McGriff should retire and her

speculation–"guessing"– about what was on Ms. Graves's mind when she decided to

promote Mr. Magouyrk over Mr. McGriff.  Consistent with the Eleventh Circuit's

reasoning in *Mitchell* and other comparable cases, this evidence, attributable to an

employee who lacked decision-making authority or input, does not raise a reasonable

inference of age discrimination with respect to Mr. MrGriff's non-promotion.

Further, this same type of analysis applies equally to the alleged question asked by

Harry Gabriel ("Mr. Gabriel"), the Division Operations Manager for Power Delivery,

in an open meeting of field service foreman occurring during the spring of 2011. *See* AF No. 42.5 (inquiring whether "anybody know when Jim McGriff is going to retire?").

Furthermore, Mr. McGriff has failed to advance a cat's paw theory of discrimination tied to either Ms. Potts or Mr. Gabriel. *Cf. Williamson v. Adventist Health System/Sunbelt, Inc.*, 372 Fed. App'x 936, 938 (11th Cir. 2010) ("We have held that a 'cat's paw' theory of recovery may apply when a biased actor recommends that an adverse employment action be taken against an employee, but the biased actor is not the ultimate decision-maker." (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999))); *Williamson*, 372 Fed. App'x at 938 ("In such a situation, the employee must provide evidence that the recommender's alleged discriminatory animus directly caused the decision-maker to take adverse employment action against its employee." (citing *Simpson*, 186 F.3d at 1331). Therefore, neither Ms. Potts nor Mr. Gabriel helps Mr. McGriff to meet his pretext requirement.

Citing to his own deposition testimony as underlying evidentiary support, Mr. McGriff finally vaguely contends that APCo's treatment of employees Susan McKinney and Joe Hyatt are sufficient to show pretext in his situation because they "both lost positions to younger candidates." (Doc. 21 at 17). However, Mr. McGriff

24

offers no context that explains the circumstances surrounding APCo's handling of these job openings, omitting, in particular, who the relevant decision-makers were.

In sum, Mr. McGriff's attempts to show pretext are unavailing, and APCo's Rule 56 Motion is due to be granted consistent with the court's conclusions reached as to each one of the above alternative justifications provided by APCO for its decision. *See, e.g., Chapman*, 229 F.3d at 1037 ("[W]e affirm the district court's grant of summary judgment to the defendants on two independently adequate bases: Chapman's failure to create a genuine issue of pretext as to the objective reason, and also his failure to create a genuine issue of pretext as to the subjective reason.").

### B.   APCo's Unopposed Strike Motion

The Strike Motion seeks to strike from the record two exhibits relied upon by Mr. McGriff in opposition to summary judgment on the grounds that neither document has been properly authenticated by way of an affidavit or declaration from a witness who has personal knowledge of the materials.  (Doc. 22 at 2 ¶ 3).  Exhibit 2 (Doc. 21-3) is labeled "Knowledge Transfer" and exhibit 3 (Doc. 21-4) is entitled "What Constitutes 'Qualified'".  Mr. McGriff elected not to oppose APCo's Strike Motion.

In support of its evidentiary position, APCo relies upon an unpublished panel decision by the Eleventh Circuit in *Saunders v. Emory Healthcare, Inc.*, 360 Fed.

25

App'x 110 (11th Cir. 2010):

> The district court's decision to grant in part Emory's motion to strike Saunders' unauthenticated exhibits was not an abuse of discretion. <u>To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence</u>. 10 A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure:  Civil § 2722, at 382-84 (3d ed.1998). Because the exhibits were not properly authenticated, the district court was not required to consider them in opposition to Emory's motion for summary judgment.  Moreover, many of the stricken exhibits were authenticated by either Emory or deponents in the case; therefore, striking Saunders' exhibits did not cause a substantial prejudicial effect.   Because Saunders' exhibits were not properly authenticated and the decision to strike them did not cause a substantial prejudicial effect, the district court did not abuse its discretion by striking the exhibits.

*Saunders*, 360 Fed. App'x at 113 (emphasis added).

As the Eleventh Circuit has summarized the evidentiary contours applicable on summary judgment in a published decision:

> We do not read *Celotex* to permit McMillian to defeat summary judgment with the type of hearsay evidence offered in this case.  In *Celotex*, the Supreme Court said:

> > We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.  Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally

> expect the nonmoving party to make the showing to which
> we have referred.
>
> 477 U.S. at 324, 106 S. Ct. at 2553. <u>We read this statement as simply
> allowing <i>otherwise admissible</i> evidence to be submitted in inadmissible
> form at the summary judgment stage, though at trial it must be submitted
> in <i>admissible</i> form.</u> <i>See Offshore Aviation</i>, 831 F.2d at 1017
> (Edmondson, J., concurring).

*McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (emphasis by underlining

added); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited

to support or dispute a fact cannot be presented in a form that would be admissible

in evidence.").[9]

Here, APCo maintains that exhibits 2 and 3 are inadmissible because they are

unauthenticated.   Mr. McGriff neither contests the inadmissible status of these

documents nor explains how at trial they might otherwise be submitted in an

admissible form.   Under such circumstances and applying *McMillian*'s Rule 56

evidentiary model persuasively, the court finds that APCo's Strike Motion is due to

be granted.

However, even when considering the challenged evidence as some proof of

pretext, the court still finds that APCo's Rule 56 Motion is due to be granted and,

thus, APCo's Strike Motion is alternatively due to be termed as moot.   More

---

[9]  Rule 56, as amended on April 28, 2010, and effective on December 1, 2010.

particularly, as Mr. McGriff has summarized these materials, exhibit 2 "recognize[s] the aging employee population and discusses] how to transfer the knowledge from the older employees to the younger employees who do not have such experience." (Doc. 21 at 17). Exhibit 3 contains the "suggest[ion] that the company should hire new employees with fresher perspectives instead of hiring employees based primarily on their experience." *Id.*

However, Mr. McGriff's reliance upon these records creates only a weak issue of pretext, at best, because he has made no attempt to link these documents to the final decision-maker and recommenders who were substantively involved in the selection of Mr. Magouyrk over him for the open ACSM position. As a result, the court cannot confirm, and, indeed, can only speculate about whether these materials had any impact on the promotional process that was unfavorable to Mr. McGriff. Moreover, such a paucity of pretext is outweighed by the plethora of evidence that no illegal age discrimination took place.

As the Supreme Court has recognized regarding a plaintiff's burden in a circumstantial evidence case of discrimination:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was

28

discriminatory. For instance, <u>an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.</u> *See Aka v. Washington Hospital Center*, 156 F.3d, at 1291-1292; *see also Fisher v. Vassar College*, 114 F.3d, at 1338 ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent"). To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'" *St. Mary's Honor Center, supra*, at 524, 113 S. Ct. 2742 (quoting *Aikens*, 460 U.S., at 716, 103 S. Ct. 1478).

*Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109 (emphasis by underling added); *see also id.* at 150, 120 S. Ct. at 2110 ("And the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" (quoting *Anderson*, 477 U.S. at 250, 251, 106 S. Ct. at 2511, 2512)); *Chapman*, 229 F.3d at 1025 n.11 (addressing *Reeves*'s holding and acknowledging that "*Reeves* tells us judgment as a matter of law will sometimes be available to an employer" under Rule 56 when a plaintiff's proof of pretext is merely minimal and the employer's proffered reasons are strongly supported).

Therefore, guided by *Reeves* and *Chapman*, the court additionally concludes that APCo is still entitled to summary judgment even when factoring in the contents

of exhibits 2 and 3 as indicia of pretext because such circumstantial evidence, read in conjunction with the entire record, including Mr. MrGriff's *prima facie* case as well as his collection of concessions on summary judgment, fails to create a triable issue regarding the truthfulness of the multiple reasons given by Ms. Graves for her ACSM promotional decision.  *Cf. Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1292 (11th Cir. 1998) ("If so, the court must then determine whether such circumstantial evidence, along with other evidence (including Ross's *prima facie* case), might lead a reasonable jury to disbelieve Rhodes's proffered reason for firing Ross.").

## V.    CONCLUSION

Accordingly, for the reasons explained above, APCo's Rule 56 Motion is due to be granted.  Further, APCo's Strike Motion is due to be granted or, alternatively, termed as moot.  The court will enter a separate order.

**DONE** and **ORDERED** this 12th day of July, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge